UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

-----------------------------------------------------X

JEFFREY ROBBINS, ASHLEY        :       Civil Action No. 15-cv-6187-FPG-JWF
HARDY, VERONIQUE HEPLER,   :
CHRISTINA LE, CINDY PANG,    :
AGNIESZKA PUSTELNICK, CLINTON :
THOMPSON, CASSANDRA WAT and  :
DOMONIQUE MARCEAU, individually :
and on behalf of themselves and all  :
others similarly situated,       :       Class and Collective Action Complaint
                                :       Jury Trial Demanded

          Plaintiffs,      :
                                :

   v.                   :
                                :

ABERCROMBIE & FITCH CO.,     :
ABERCROMBIE & FITCH        :
STORES, INC., and J.M. HOLLISTER, :
LLC d/b/a HOLLISTER COMPANY  :
                                :
         Defendants.     :

-----------------------------------------------------X

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, FOR AWARD OF ATTORNEYS' FEES AND EXPENSES, FOR APPROVAL OF ENHANCEMENT PAYMENTS TO THE NAMED PLAINTIFFS AND FOR PAYMENT OF THE CLAIMS ADMINISTRATOR'S COSTS AND EXPENSES**

Seth R. Lesser
Fran L. Rudich
Michael Reed
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573

*Attorneys for Plaintiffs*
*Other Counsel on Signature Page*

## **TABLE OF CONTENTS**

I.     FACTUAL AND PROCEDURAL BACKGROUND...……………………….……….…..2

    A.     Factual Allegations...……………....………………………………………………...2

    B.     Overview of investigation……………………………………………….…....3

    C.     Litigation………………………………………………………………………...3

        1.     The *Hepler* Litigation No. 13-cv-2815 (E.D.N.Y.)...………………….……….3

        2.     The *Wat* Litigation No. 14-cv-5361 (E.D.N.Y.)………………….……….5

        3.     The *Robbins* Litigation No. 15-cv-6187(W.D.N.Y.)……………………...5

        4.     The *Pang* Litigation No. 15-cv-1148(E.D.N.Y.)………………….…....6

    D.     Settlement Negotiations……………………………………………………....6

II.    SUMMARY OF THE SETTLEMENT TERMS……………………………………8

    A.     The Settlement Fund……………………………………………………………8

    B.     Eligible Employees……………………………………………………………9

    C.     Allocation Formula………………………………………………………...…9

    D.     Attorneys' Fees, Litigation Costs, and Enhancement Payments…………………10

    E.     The Claims Administrator……………………………………………………...10

III.   THE COURT SHOULD FINALLY APPROVE THIS SETTLEMENT
BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE AND
SATISFIES THE SECOND CIRCUIT'S *GRINNELL* FACTORS…...............................11

    A.     The Proposed Settlement Is Procedurally Fair………………………………..12

    B.     The Proposed Settlement Is Substantively Fair………………………………13

    C.     The Settlement Class Meets the Legal Standard for Class Certification…………19

        1.   Numerosity………………………………………………………………...20

        2.   Commonality………………………………………………………………20

        3.   Typicality……………………………………………………………....…..21

4.   Adequacy of the Representative Plaintiffs and Class Counsel…………………22

5.   Certification of a Settlement Class Is Proper Under Rule 23(b)(3)……….….23

   a.   Common Questions Predominate……………………………………………...24

   b.   A Class Action Is a Superior Mechanism…………………………….…...25

IV.   PLAINTIFFS' REQUESTS FOR ATTORNEYS' FEES, COSTS, AND
ENHANCEMENT PAYMENTS ARE REASONABLE AND SHOULD BE
APPROVED……………………………..…………………………………………………..26

A.   Plaintiffs' Requests for Attorneys' Fees Is Reasonable Under the
Second Circuit's *Goldberger Factors*...……………… …………………………….…26

1.   Class Counsel Has Expended Significant Time and Labor………………………....27

2.   This Class Action Involves Complex Legal Issues………………………….………29

3.   The Risk of Receiving an Adverse Ruling on the Merits and/or Certification of
the Collective or Classes Is Significant…………………………………………………...29

4.   The Parties Are Represented by Counsel with Significant Experience in Wage
and Hour Litigation………………………………………………………………….…31

5.   Class Counsel's Request for Attorneys' Feed Is Reasonable and Accords
with Similar Awards in This Circuit……………………………………………...……32

6.   Public Policy Considerations Favor The Fee Requested……………………….........33

7.   The Lodestar Cross Check Further Supports an Award to Class Counsel of
One-Third of the Settlement Fund…………………………………………….….34

B.   The Court Should Permit Payment of Costs and the Settlement Expenses from the
Settlement Fund……………………………………………………………………………....36

C.   Enhancement Payments to Representative Plaintiffs Should be Approved…………..37

Conclusion………………………………………………………………………………………...38

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ……………………………………….. 23, 25

*Barrentine v. Ark.-Best Freight Sys.,* 450 U.S. 728 (1981) ........................................................ 29

*Beckman v. KeyBank, N.A.,* 293 F.R.D. 467 (S.D.N.Y. 2013) ........................................... *passim*

*Cagan v. Anchor Sav. Bank,* 1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 17, 1990)……..…...19

*Carson v. Am. Brands,* 450 U.S. 79 (1981) ............................................................................ 16

*Capsolas v. Pasta Res. Inc.,* 2012 U.S. Dist. LEXIS 65408 (S.D.N.Y. May 9, 2012) ….23, 37, 33

*Chambery v. Tuxedo Junction, Inc.,* 10 F. Supp. 3d 415 (W.D.N.Y. 2014)………………. ..*passim*

*Compare Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233 (11th Cir. 2008)...................... 30

*Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473 (2d Cir. 1995) ...................................... 20

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91 (2d Cir. 2007) ....... 24

*Craig v. Rite Aid. Corp.,* 2013 U.S. Dist. LEXIS 2658 (W.D Pa. Jan. 7, 2013)......................... 30

*D'Amato v. Deutsche Bank,* 236 F.3d 78 (2d Cir. 2001) ........................................................ 11

*Davis v. J.P. Morgan Chase & Co.,* 775 F. Supp. 2d 601 (W.D.N.Y. 2011) ………………16, 21

*DeLeon v. Wells Fargo Bank,* 2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. May 7, 2015) ............. 12

*deMunecas v. Bold Food, L.L.C.,* 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y. Aug. 23, 2010) ..... 33

*Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir. 2006) ...................................................... 19

*Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974) ........................................................... 11

*Duchene v. Michael Cetta, Inc.,* 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009) ....... 33

*Dupler v. Costco Wholesale Corp.,* 705 F. Supp. 2d 231 (E.D.N.Y. 2010) ............................... 33

*Dziennik v. Sealift, Inc.,* 2007 U.S. Dist. LEXIS 38701 (E.D.N.Y. May 29, 2007) .................. 22

*Faican v. Rapid Park Holding Corp.,* 2010 U.S. Dist. LEXIS 64382 (E.D.N.Y. June 29, 2010)..33

*Ferreira v. Modell's Sporting Goods, Inc.,*
       2015 U.S. Dist. LEXIS 32060 (S.D.N.Y. Mar. 12, 2015) ............................................... 33

*Flores v. Anjost Corp.,* 2014 U.S. Dist. LEXIS 11026 (S.D.N.Y. Jan. 28, 2014) ................ 33, 37

*Flores v. Mamma Lombardi's of Holbrook, Inc.,* 104 F. Supp. 3d 290 (E.D.N.Y. 2015) .......... 38

*Frank v. Eastman Kodak Co.,* 228 F.R.D. 174 (W.D.N.Y. 2005) ....................................... *passim*

*Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147 (1982) ............................................ 21

*Gilliam v. Addicts Rehab. Ctr. Fund,* 2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008)...32

*Goldberger v. Integrated Res.,* 209 F.3d 43 (2d Cir. 2000) …………………………………21, 26

*Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir. 1968) ................................................... 25

*Guaman v. Ajna-Bar NYC,* No. 12 Civ. 2987 (DF),
    2013 U.S. Dist. LEXIS 16206 (S.D.N.Y. Feb. 5, 2013) ........................................ 33

*Hens v. ClientLogic Operating Corp.,*
    2010 U.S. Dist. LEXIS 139126 (W.D.N.Y. Dec. 19, 2010) ………………………………32, 38

*Hernandez v. Merrill Lynch & Co.,*
    2013 U.S. Dist. LEXIS 42681 (S.D.N.Y. Mar. 21, 2013) ...................................... 33

*In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........... 18

*In re Indep. Energy Holdings Public Ltd. Co. Sec. Litig.,*
    302 F. Supp. 2d 180 (S.D.N.Y. 2003) ............................................................... 36

*In re SumitomoCopper Litig.,* 74 F. Supp. 2d 393 (S.D.N.Y. 1999) ........................................... 33

*In re Telik, Inc.Sec. Litig.,* 576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................. 35

*In re Visa Check/MasterMoney Antitrust Litig,* 280 F.3d 124 (2d Cir. 2001) ............................ 24

*Jacob v. Duane Reade, Inc.,* 602 F. App'x 3 (2d Cir. 2015) ...................................... 21

*Johnson v. Brennan,* 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) ..................... 29

*Joel A. v. Giuliani,* 218 F.3d 132 (2d Cir. 2000) ........................................................ 19

*Khait v. Whirlpool Corp.,* 2010 U.S. Dist. LEXIS 4067 (S.D.N.Y. Jan. 20, 2010) ................... 34

*Knapp v. Badger Techs., Inc.,* 2015 U.S. Dist. LEXIS 77186 (W.D.N.Y. June 15, 2015) ......... 32

*Lovaglio v. W & E Hosp.,* 2012 U.S. Dist. LEXIS 94077 (S.D.N.Y. July 5, 2012) ................... 32

*Marlo v. UPS, Inc.,* 639 F.3d 942 (9th Cir. 2011) ................................................... 17

*Marriott v. Cnty. of Montgomery,* 227 F.R.D. 159 (N.D.N.Y. 2005) .......................................... 24

*McBean v. City of New York,* 228 F.R.D. 487 (S.D.N.Y. 2005) .................................................. 24

*McMahon v. Olivier Cheng Catering & Events, L.L.C.,* 2010 U.S. Dist. LEXIS 18913,
   (S.D.N.Y. Mar. 2, 2010) .......................................................................................................32

*Mitchell v. Abercrombie & Fitch Co.,* 225 F. App'x 362 (6th Cir. 2007) .................................. 16

*Mitchell v. Abercrombie & Fitch, Co.,* 428 F. Supp. 2d 725 (S.D. Ohio 2006) ......................... 16

*Myers v. Hertz Corp.,* 624 F.3d 537 (2d Cir. 2010) .................................................................... 17

*Newman v. Stein,* 464 F.2d 689 (2d Cir. 1972) .......................................................................... 19

*Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330 (S.D.N.Y. 2004) .............................................. 24

*Odom v. Hazen Transp., Inc.,* 275 F.R.D. 400 (W.D.N.Y. 2011) ............................................... 16

*Officers for Justice v. Civil Serv. Com.,* 688 F.2d 615 (9th Cir. 1982) ...................................... 19

*Palacio v. E\*Trade Fin. Corp.,* 2012 U.S. Dist. LEXIS 88019 (S.D.N.Y. June 22, 2012) ......... 32

*Parker v. Jekyll & Hydye Entm't Holdings., L.L.C.,* 2010 U.S. Dist. LEXIS 12762
   (S.D.N.Y. Feb 9, 2010) …………………………………………………………………28, 33

*Port Auth. Police Benevolent Asso. v. Port Auth. of N.Y. & N.J.,* 698 F.2d 150 (2d Cir. 1983) ..21

*Prasker v. Asia Five Eight L.L.C.,* 2010 U.S. Dist. LEXIS 1445 (S.D.N.Y. Jan. 4, 2010) ......... 33

*Raniere v. Citigroup Inc.,* 310 F.R.D. 211 (S.D.N.Y. 2015) ...................................................... 33

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,* 237 F.R.D. 26 (E.D.N.Y. 2006) ................. 20

*Robidoux v. Celani,* 987 F.2d 931 (2d Cir. 1993) ....................................................................... 22

*Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590 (2d Cir. 1986) ................................................. 23

*Sewell v. Bovis Lend Lease LMB, Inc.,*
   2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) ...................................................... 38

*Stefaniak v. HSBC Bank USA, N.A.,*
   2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008) ............................................... 32, 37

*Stillman v. Staples, Inc.,* 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 11, 2009)........................ 30

*Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007), ............................ 29

*Tiro v. Public House Invs., LLC,* 2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sept. 10, 2013) ... 29

*Toure v. Amerigroup Corp.,*
    2012 U.S. Dist. LEXIS 110300 (S.D.N.Y. Aug. 6, 2012) ................................................. 12

*Trinidad v. Breakaway Courier Sys., Inc.,* 2007 U.S. Dist. LEXIS 2914
    (S.D.N.Y. Jan. 12, 2007) ................................................................................................. 22

*Tyson Foods Inc. v. Bouaphakeo,* 2016 U.S. LEXIS 2134 (Mar. 23, 2016) ............................... 24

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011) ............................................................ 21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96 (2d Cir. 2005) ................................. *passim*

*Yuzary v. HSBC Bank USA, N.A.,*
    2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013) ........................................................ 35

## Federal Statutes and Regulations

29 U.S.C. § 216(b) (2012) .......................................................................................... *passim*

29 U.S.C. §§ 255 (2012) .................................................................................................... 17

29 C.F.R. § 778.114 (2013) ....................................................................................... *passim*

## Federal Rules

Fed. R. Civ. P. 23(a) ................................................................................................... 19, 20

Fed. R. Civ. P. 23(a)(1) ..................................................................................................... 20

Fed. R. Civ. P. 23(a)(4) ..................................................................................................... 22

Fed. R. Civ. P. 23(b)(3) ................................................................................................. 23, 25

Fed. R. Civ. P. 23(e) ......................................................................................................... 11

## INTRODUCTION

Plaintiffs Ashley Hardy, Veronique Hepler, Christina Le, Dominique Marceau, Agnieszka Pustelnik, Jeffrey Robbins, Clinton Thompson, and Cassandra Wat (together, "Plaintiffs" or "Representative Plaintiffs") move for final approval of this settlement.

This $5,250,000 settlement for all claims resolves multiple lawsuits and years of litigation challenging the manner in which, for a period of time, Defendants Abercrombie & Fitch Co., Abercrombie & Fitch Stores, Inc., and J.M. Hollister, LLC (together, "Defendants" or "Abercrombie") paid Assistant Managers[1] half-time overtime pay rather than full time and one-half overtime, purportedly in violation of the provisions of the Fair Labor Standards Act ("FLSA") relating to half-time pay. On December 22, 2015, the Court preliminarily approved the settlement and found that the Settlement Agreement "appear[s] on its face to be fair, reasonable, and adequate and to have been the product of serious, informed, and extensive arm's-length negotiations" between the Parties. Dkt. 37 at 2. The Court also authorized notice of the settlement to be sent to the Class Members. *Id*. at 4.

The Claims Administrator, Settlement Services, Inc. ("SSI"), mailed the notice to the 4,329 Class Members advising them of the Settlement. Only three Class Members opted out, highlighting the resounding support from 99.93% of the Settlement Class. Ex. B (Patton Declaration) ("Patton Decl.") ¶ 9; Lesser Decl. ¶ 39. If the Settlement is approved, all of the non-opt-out Class Members (the "Eligible Class Members") will be paid their settlement amounts. Plaintiffs submit that the Settlement is ripe for final approval and request approval of:

---

[1] Assistant Managers include Managers-in-Training, Stock Managers, Overnight Managers, and Loss Prevention Agents (collectively referred to herein as "AMs") who worked for Defendants during the settlement class period. Declaration of Seth R. Lesser ("Lesser Decl.") at Exhibit A (Settlement Agreement) ¶ 3. Exhibits attached to the Lesser Declaration will be identified by their exhibit number and description (*e,g.*, Ex. A (Settlement Agreement")). Capitalized terms have the same meaning as defined in the Settlement Agreement.

1

(1) the Settlement as a fair and reasonable resolution of a *bona fide* dispute; (2) Class Counsel's request for an award of attorneys' fees of $1,732,500 and expenses of $52,500; (3) a $7,000 enhancement payment to each of the Representative Plaintiffs; and (4) the Claims Administrator's costs of $39,850.  This Settlement Agreement readily satisfies – Plaintiffs submit – all of the criteria under for approval.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.    Factual Allegations

Plaintiffs and Class Members are current and former employees of Defendants who have worked as Managers-in-Training, Assistant Managers, Stock Managers, Overnight Managers, and Loss Prevention Agents (collectively referred to herein as "AMs"), in New York, Connecticut, Illinois, Maryland, Massachusetts, New Jersey, Ohio, and Washington.  Plaintiffs allege that Defendants violated the FLSA and, concomitantly, the wage and hour laws of New York, Connecticut, Illinois, Maryland, Massachusetts, New Jersey, Ohio, and Washington (the "State Laws"), by not paying overtime to AMs at rates that were a full time and one-half of their regular rates of pay.  Lesser Decl. ¶ 3; Second Amended Complaint (Dkt. 40).  Plaintiffs claim that Defendants' common fluctuating workweek pay practice – through which Defendants paid AMs overtime at approximately one-half of their regular rate of pay, as compared to time-and-one-half – violated the FLSA and the State Laws, entitling them and the Class Members to, among other things, unpaid overtime wages, liquidated damages, and attorneys' fees and costs.  Lesser Decl. ¶ 4; Second Amended Complaint (Dkt. 40).

---

[2] This section of this memorandum is materially the same as that which was set forth at pages 3-8 of Plaintiffs' preliminary approval memorandum (Dkt. 34), and is repeated here for the Court's convenience.

### B.     Overview of Investigation

Before the initiation of this action, Plaintiffs conducted a thorough investigation into the merits of the potential claims and defenses.  Lesser Decl. ¶¶ 6-8.  Plaintiffs focused their investigation and legal research on the underlying merits of claims under 29 C.F.R. § 778.114, the damages to which they were entitled, and the propriety of Rule 23 class and FLSA collective action certification.  *Id.*  Class Counsel interviewed Plaintiffs to determine the hours that they worked, the wages they were paid, Defendants' compensation practices, the nature of Plaintiffs' duties and responsibilities, and other information relevant to Plaintiffs' claims.  *Id*. ¶ 8.  Plaintiffs also reviewed the United States Department of Labor's Final Rule, issued in April 2011, addressing § 778.114 (as well as the preliminary rule announcement that proceeded it), case law, state statutes, and federal regulations that addressed the half-time method of overtime compensation.  *Id.* ¶ 6.  Plaintiffs allege that Defendants did not pay Plaintiffs a fixed salary as required by law and therefore owe them and others similarly situated damages.  *Id.* ¶ 4; 29 C.F.R. § 778.114.

Class Counsel also obtained and reviewed documents from Plaintiffs related to their employment with Defendants, including pay records, offer letters, company policies and procedures and other related documents.  Lesser Decl. ¶ 7.  Plaintiffs conducted background research on Defendants, including reviewing SEC filings and other public documents.  *Id*.

### C.    Litigation

This Settlement Agreement is the byproduct of multiple years of hard fought litigation.

### 1.     *The Hepler Litigation No. 13-cv-2815 (E.D.N.Y.)*

On May 10, 2013, Plaintiff Hepler filed a class and collective action Complaint against Defendants Abercrombie & Fitch Co. and Abercrombie & Fitch Stores, Inc. in the United States

District Court for the Eastern District of New York on behalf of herself and others similarly situated, alleging that Defendants violated the FLSA and the New York Labor Law ("NYLL"), by not paying overtime at time and one-half to AMs who worked in Abercrombie stores.  The Complaint sought recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages.  Lesser Decl. ¶ 9.  The Defendants answered on June 7, 2013, and moved to transfer venue to the Southern District of Ohio on August 9, 2013.  *Id.* ¶ 10.  The Court denied the Defendants' motion on January 9, 2014.  *Id.*

At the end of February 2014, Defendants served Rule 68 offers of judgment on Plaintiffs Hepler and Marceau (as well as individuals who had opted into the case).  *Id.* ¶ 11.  After Hepler and Marceau refused to accept the offers of judgment (which they asserted were insufficient, among other things, to resolve their state law claims), the parties engaged in discovery, including the production of tens of thousands of pages of documents and deposition work, much of which was disputed because Defendants asserted the case had been rendered moot by the offers of judgment.  Plaintiffs moved for FLSA conditional certification and Defendants moved to dismiss Hepler's and Marceau's cases as moot for lack of subject matter jurisdiction.  *Id.*  In addition, and among other things, in opposing FLSA notice and conditional certification, Defendants asserted that no overtime at all was owed because the work AMs had done was managerial in nature, and, accordingly, AMs were not entitled to any overtime at all and hence had no claim for overtime.  *Id.* ¶ 12.  Defendants also asserted that  damages, if any, were limited to only a few specific weeks worked each year under 29 C.F.R. § 778.114.  *Id.*  On October 3, 2014, the court granted Defendants' motion to dismiss of the case as moot based upon the offers of judgment, did not decide the conditional certification motion, declined to exercise supplemental jurisdiction

over Hepler and Marceau's NYLL claims, and did not reach any of the other issues presented by the lawsuit. *Id.*

Plaintiffs appealed the mootness dismissal to the Second Circuit in October 2014. *Id.* ¶ 13. After briefing and argument, the Court of Appeals vacated the district court's order and remanded the case on July 13, 2015. As described below, on April 3, 2015 (while the appeal was pending), Plaintiffs Hepler, Robbins and Marceau filed this action, asserting their FLSA claims on individual and collective bases, and also asserting New York Labor Law claims on behalf of a New York class. *Id.*. ¶ 14; *see infra* at 5-6 (discussing *Robbins* matter). Accordingly, Plaintiffs Hepler and Marceau are named Plaintiffs in both *Hepler* and the present action, a result of their having to refile their individual state claims to preserve their rights and the rights of putative class members in the event the *Hepler* dismissal was affirmed.

### 2.     *The Wat Litigation No. 14-cv-5361 (E.D.N.Y)*

On September 12, 2014, Plaintiff Cassandra Wat filed a class and collective action complaint against Defendants Abercrombie & Fitch Stores, Inc. and J.M. Hollister LLC in the Eastern District of New York on behalf of herself and others similarly situated, alleging that Defendants violated the FLSA and the NYLL by not paying overtime at time and one-half to Hollister AMs (a subsidiary of Abercrombie & Fitch Stores, Inc.). *Id.* ¶ 15. Defendants answered on December 5, 2014. *Id.* ¶ 16. The parties conducted written discovery. Counsel for the parties conferred on many occasions about discovery issues, potential damages, and the merits of the claims. *Id.* ¶ 17.

### 3.     *The Robbins Litigation No. 15–cv-6187 (W.D.N.Y.)*

As noted above, Plaintiffs Jeffrey Robbins, Veronique Hepler, and Dominique Marceau filed the instant class and collective action complaint against Defendants Abercrombie & Fitch

Co. and Abercrombie & Fitch Stores, Inc. to preserve the NYLL claims for New York putative class members, and to allow the FLSA and NYLL claims to proceed for Plaintiffs and other AMs. *Id.* ¶ 18. Defendants answered on April 24, 2015.

On June 21, 2015, Plaintiffs amended their complaint to add Plaintiffs Christina Le and Ashley Hardy, to add Defendant J.M. Hollister LLC, to assert Rule 23 class claims on behalf of New Jersey and Maryland AMs, and to expand the FLSA allegations to include AMs at all of Defendants' brands. *Id.* ¶ 20. On July 2, 2015, Plaintiffs filed a motion for conditional certification and notice pursuant to 29 U.S.C. § 216(b), requesting that this Court permit Plaintiffs to send a notice of this lawsuit and provide an opportunity for AMs to join the FLSA collective action. *Id.* ¶ 21. After being advised of a scheduled mediation, the Court extended Defendants' response to Plaintiffs' motion to September 17, 2015. *Id.* The parties agreed to settle this matter before Defendants' response was due.

### 4.    *The Pang Litigation No. 15-cv-1148 (E.D.N.Y.)*

On March 5, 2015, Plaintiffs Cindy Pang, Clinton Thompson, and Agnieska Pustelnik filed a class and collective action complaint against Defendants Abercrombie & Fitch Stores, Inc. and J.M. Hollister LLC in the Eastern District of New York on behalf of themselves and others similarly situated, alleging that Defendants violated the FLSA and the NYLL, by not paying overtime at time and one-half to Abercrombie and Hollister AMs. *Id.* ¶ 22. Defendants answered on April 17, 2015. *Id.* Given the overlap of the *Pang* claims and those in *Hepler*, *Robbins*, and *Wat*, no formal discovery occurred in *Pang*. *Id*. ¶ 23.

### D.    **Settlement Negotiations**

During the first two weeks of March 2015, the Parties discussed going to mediation and the sharing of damages data to facilitate settlement discussions of all the pending actions. *Id.* ¶

24.  The Parties engaged in informal discovery in anticipation of mediation to allow the Parties to more fully assess the claims and to calculate damages.  *Id.* ¶ 25.  Defendants provided information concerning their fluctuating workweek pay practice including, among other things, the cessation of the practice in September 2014, the total overtime wages paid to Plaintiffs and the Settlement Class, as well as information concerning Defendants' affirmative defenses, such as their defense that they acted in good faith and that their pay practice at issue had previously been found to be valid by other courts.  *Id*. ¶ 26.  This exchange of information was in addition to the discovery obtained through litigation.  Plaintiffs and Defendants analyzed the damages data and constructed damages models.  *Id.* ¶ 27.  The parties also had numerous telephone calls addressing the claims and potential damages.  *Id.*  Plaintiffs researched how to measure damages in cases involving fluctuating workweek payment practices.  *Id.*

On July 31, 2015, the Parties attended a full-day mediation session in Columbus, Ohio with Hunter Hughes, Esq., a well-known and experienced mediator in wage and hour litigation. After a full day of extensive negotiations facilitated by the mediator, the Parties agreed in principal to resolve the *Hepler*, *Pang*, *Robbins*, and *Wat* matters for $5.25 million.  *Id.* ¶ 28. Over the next month and one-half, the Parties continued to negotiate the actual terms of the Settlement Agreement and all accompanying documents, and continued to discuss how to procedurally resolve all four pending cases.  *Id.* ¶ 29.  After this Court preliminarily approved the Settlement Agreement, the courts entered Stipulations and Orders in the *Pang* and *Wat* actions to transfer those actions to the Western District of New York to be consolidated with the *Robbins* action for settlement purposes.  *See* Settlement Agreement ¶ 37.  The *Hepler* case (where, as noted Plaintiffs Hepler and Marceau are the only named Plaintiffs, as they are also named

Plaintiffs here) will be dismissed with prejudice pending approval of the Settlement by this Court.  *Id.*

Based on the discovery, fact investigations, and settlement negotiations, Class Counsel (as well as Defendants' counsel) were in an exceedingly favorable position to evaluate the strengths and the weaknesses of their claims and defenses.  Class Counsel is well-experienced in this area of the law and informed of the issues.  *Id.* ¶¶ 43-46.  Similarly, Defendants could fully evaluate the strengths and weaknesses of their defenses.  The Settlement Agreement is thus the product of fully-informed parties negotiating forcefully and at arm's length.  The Settlement Agreement reflects a reasonable compromise that the Court should approve in order to promote the policy of encouraging settlement of litigation.

The response of the Class Members has been extremely positive, and Class Counsel has received messages of thanks from individuals in the Class.  Lesser Decl. ¶ 38.  *If approved, 4,326 Class Members will receive a check representing their share of the settlement from the Fund – 99.93% of the Class Members.  Id.* ¶ 39; Patton Decl. ¶ 9.  There have been no objections to any part of the Settlement.  Lesser Decl. ¶ 39.

Thus, Plaintiffs are pleased to present this Settlement Agreement to the Court for final approval.

## II.   <u>SUMMARY OF THE SETTLEMENT TERMS</u>

### A.   The Settlement Fund

While the litigation was complicated, the Settlement Agreement's terms are straightforward.  The Settlement Agreement creates a common fund of Five Million Two Hundred Fifty Thousand Dollars ($5,250,000.00) (the "Fund") to settle the claims asserted in Second Amended Complaint (Dkt. 40), which includes all claims asserted in the four actions against Defendants.  Lesser Decl. ¶ 30; Settlement Agreement ¶¶ 40-41.  The Fund covers

payment of all Class Members' awards, enhancement payments to the Representative Plaintiffs,

attorneys' fees and costs, settlement administrator's fees and costs, and employee and employer

share payroll taxes.  Lesser Decl. ¶ 31; Settlement Agreement ¶¶ 42-43.

### B.      Eligible Employees

Class Members who are entitled to receive payments from the Fund include:

> (i) all persons employed for one or more weeks as an AM in  New York
> from May 10, 2007 to September 30, 2014; (ii) all persons employed in the
> AM position in Connecticut from May 7, 2012 to September 30, 2014; (iii)
> all persons employed in the AM position in Illinois from May 7, 2012 to
> September 30, 2014; (iv) all persons employed in the AM position in
> Maryland from May 7, 2012 to September 30, 2014; (v) all persons
> employed in the AM position in Massachusetts from May 7, 2012 to
> September 30, 2014; (vi) all persons employed in the AM position in New
> Jersey from May 7, 2012 to September 30, 2014; (vii) all persons employed
> in the AM position in Ohio from May 7, 2012 to September 30, 2014; and
> (viii) all persons employed in the AM position in Washington from May 7,
> 2012 to September 30, 2014.

Settlement Agreement ¶ 21.  Only three Class Members requested to be excluded from the

settlement.  Patton Decl. ¶ 9.  Therefore, if the settlement is approved, 4,326 Eligible Class

Members will receive a check representing their share of the settlement from the Fund.

Settlement Agreement ¶¶ 15, 47.

### C.      Allocation Formula

Eligible Class Members will be paid pursuant to an allocation formula based on the

number of overtime hours worked by each Eligible Class Member during the applicable State

class period.  *Id.* ¶ 47(a).  Defendants here kept accurate contemporaneous time records, which,

accordingly are fair to utilize.  Each Eligible Class Member's Award will be calculated by

multiplying the fraction x/y by the Net Funds Available for Settlement, where "x" equals the

"Overtime Hours Worked" attributed to each Eligible Class Member based on Defendants' time

records, and "y" equals the Settlement Class Total Overtime Hours Worked.  *Id.*  The Claims

Administrator has determined the "Settlement Class Total Overtime Hours Worked" by determining the Overtime Hours Worked for each Eligible Class Member and then aggregating the Overtime Hours Worked for all Eligible Class Members to reach the Settlement Class Total Overtime Hours Worked.  *Id*.

### D.   Attorneys' Fees, Litigation Costs, and Enhancement Payments

The Settlement Agreement provides for Class Counsel to be paid 33% of the Settlement Fund ($1,732,500) for attorneys' fees, plus $52,500 for litigation costs.  *Id*. ¶ 43(b).  It also provides for enhancement payments of $7,000 to be paid to each of the Representative Plaintiffs, who will, in turn, provide a general release of all claims (unlike the Eligible Class Members who will only release FLSA and state law wage and hour claims).  *Id*. ¶ 43(a).  As discussed below at pages 32-33, courts routinely approve attorneys' fees requests of 33% of a common fund class action settlement and enhancement payments of similar amounts to those requested here.  This is particularly true where, as here, the relief provided to the Eligible Class Members represents a significant portion of the claimed damages had they prevailed on all issues in the litigation. Lesser Decl. ¶ 37.  Moreover, no Class Members have objected to the requested fees, costs, and enhancement payments after they were notified of such requests in the Notice.  Patton Decl. ¶ 10; *see also id.* at Ex. A (Court-authorized Notice).

### E.   The Claims Administrator

The Court appointed Settlement Services, Inc., an experienced wage and hour claims administrator, to administer the settlement.  Preliminary Approval Order (Dkt. 37) ¶ 6.  The Claims Administrator's fees, which are requested in the amount of $39,850, will be paid from the Fund.  Settlement Agreement ¶ 43(c).

On January 21, 2016, the Claims Administrator mailed the Court-approved Notices to 4,329 Class Members.  Lesser Decl. ¶ 36; Patton Decl. ¶ 6.  After the Notices were mailed, the Claims Administrator received 583 Notices returned as undeliverable by the Post Office without updated addresses.  Patton Decl. ¶ 7.  The Claims Administrator performed 583 address traces for these undeliverable Notices, and re-mailed 439 of them to Class Members for whom new addresses were located.  *Id.*  There were a total of 49 Class Members for whom Notices were ultimately undeliverable.  *Id.*

The Notice described the terms of the settlement and each person's approximate award to permit the Class Members to make informed choices.  Patton Decl. at Ex. A at 3.  It also explained how Class Members could object to the settlement or exclude themselves from it.  *Id.* at 6-7.  No Class Member objected to the settlement.  Patton Decl. ¶ 10.  Only 3 of 4,329 Class Members requested exclusion.  *Id.* ¶ 9.  SSI will disburse payments to the Eligible Class Members upon approval, as well as calculate and remit taxes, in accordance with the Settlement Agreement.  *Id.* ¶ 3.

## ARGUMENT

### III.  THE COURT SHOULD FINALLY APPROVE THIS SETTLEMENT BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE AND SATISFIES THE SECOND CIRCUIT'S *GRINNELL* FACTORS

Rule 23(e) requires court approval to insure that a class action settlement is procedurally and substantively fair, reasonable and adequate.  Fed. R. Civ. P. 23(e).  To determine procedural fairness, courts examine the negotiating process leading to the settlement.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v.*

11

*Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated in part on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits.  *Wal-Mart Stores*, 396 F.3d at 116 (quotation omitted).

### A.   The Proposed Settlement Is Procedurally Fair

The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations involving experienced counsel and a highly regarded wage and hour mediator, and only after experienced counsel had evaluated the merits of Plaintiffs' claims.  *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013) (finding settlement to be procedurally fair where it was reached after "arm's-length negotiations involv[ing] counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process"); *Toure v. Amerigroup Corp.*, 2012 U.S. Dist. LEXIS 110300, at *7 (S.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator).

A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (quoting Manual for Complex Litigation, § 30.42 (3d Ed. 1995)) (quotations omitted); *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (same).  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *DeLeon v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 65261, at *6 (S.D.N.Y. May 7, 2015) (quotation omitted).

Here, the settlement was reached after Plaintiffs completed a thorough investigation, conducted discovery, reviewed documents, analyzed Defendants' compensation policies, researched case law and the Department of Labor regulations, interpretations, and opinion letters concerning the claims and potential defenses, after an appeal to the Second Circuit and further litigation upon remand, and further after extensive arm's-length negotiations and information exchange between the parties.  Lesser Decl. ¶¶ 5-8, 25-27.  The parties attended an all-day mediation with an experienced employment law mediator on July 31, 2015, during which they engaged in a vigorous exchange regarding their respective claims and defenses.  *Id.* ¶ 28.  At the conclusion of the mediation, the parties reached agreement on the settlement amount and several other key terms.  *Id.*  During the next several weeks, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal settlement agreement including all terms.  Settlement Agreement.  At all times, the Parties negotiated on an arm's-length basis.  Lesser Decl. ¶ 25-28.  These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process.  *Wal-Mart Stores*, 396 F.3d at 116; *Beckman*, 293 F.R.D. at 474; *Frank*, 228 F.R.D. at 184; *Toure*, 2012 U.S. Dist. LEXIS 110300, at *7.

### B.     The Proposed Settlement Is Substantively Fair

In evaluating whether a class action settlement is substantively fair, courts in the Second Circuit generally consider the nine factors set forth in *Grinnell*, 495 F.2d at 463.  The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a

greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. Each of the *Grinnell* factors supports a conclusion that the Settlement is fair, reasonable, and adequate.

*First*, with respect to complexity, expense, and duration of litigation, it is clear that the prosecution of this case would be lengthy and expensive. If this Settlement is not approved, the Parties face an extended and costly battle, first regarding FLSA notice and conditional certification and then, no less so, as to any state law Rule 23 class certification, then regarding summary judgment as to the scope and interpretation of the 29 C.F.R. § 778.114 fluctuating work week provisions, and then regarding whether Defendants acted willfully or in good faith. Novel issues of interpreting 29 C.F.R. § 778.114 are presented (such as the liability question itself and whether damages would be for the entirety of the working period of the employees or only the weeks in which Defendants paid the allegedly improper holiday pay bonuses). Similarly, Defendants' defense that Class Members are exempt from receiving overtime under federal and state law would be vigorously disputed. Appeals could be further taken as to such determinations (this litigation already has included one trip to the Second Circuit) and even getting to trial could take substantial time given pre-trial decertification briefing. The Settlement makes monetary relief available to the Class Members promptly and efficiently. This factor weighs in favor of approval.

*Second*, with respect to the reaction of the class to the settlement, Class Counsel has received numerous messages from Class Members expressing their approval of the settlement and their gratitude for Class Counsel's efforts. Lesser Decl. ¶ 38. Only three of the 4,329 Class Members – 0.07% of the Settlement Class – asked to be excluded from the settlement. *Id.* ¶ 39.

No Class Member objected to the settlement. *Id.* If it is approved, the Claims Administrator will mail checks to the remaining 4,326 Eligible Class Members. Given the overwhelming Class concurrence (or at least a lack of rejection), this factor favors approval.

*Third*, with respect to the stage of proceedings and the amount of discovery completed, Class Counsel conducted a sufficient investigation as to the merits of the claims asserted, as well as the potential recoverable damages, to allow them to assess the fairness of the Settlement. *See* Lesser Decl. ¶¶ 5-8, 25-27. The Parties investigated the claims from the outset, and were able to argue matters as to the nature of the case in the competing papers on conditional certification in the *Hepler* matter. The parties served and responded to discovery requests, reviewed document productions (including electronically stored information), performed research concerning the Defendants' compensation practices, and had depositions. *Id.* ¶¶ 11, 27.

The forthright nature of the mediation process and the back-and-forth between the sides, as well as the views of an extremely respected and experienced mediator as to those strengths and weaknesses, focused the Parties on the legal and factual issues presented by the case, and this Settlement will resolve the legal risks associated with those claims, which the Plaintiffs fully appreciate at this point in the litigation. *Id.* ¶¶ 25-28, 37, 41-46. Further, to allow the Parties to perform damages calculations in preparation for that mediation, the Parties exchanged informal discovery, including data showing the number of Class Members and payroll data. *Id.* ¶¶ 25, 27. Therefore, this factor favors final approval. *See Chambery*, 2014 U.S. Dist. LEXIS 101939, at *17 (finding that the exchange of "a significant amount of data including time and payroll records" supported final approval of wage and hour class and collective settlement); *Frank*, 228 F.R.D. at 185 (approving settlement of case "in the relatively early stages of discovery" where parties had exchanged information regarding identities of potential class members, the hours they

worked, and the relevant rates of pay); *Odom v. Hazen Transp., Inc*., 275 F.R.D. 400, 411

(W.D.N.Y. 2011) (same); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 121 (encouraging "early

resolution of [class action] litigation").

*Fourth*, although Plaintiffs believe their case is strong, it is subject to risk.  "'In

considering the risks of establishing liability and damages, and of maintain the class action

through the trial, it is important to keep in mind that th[e] Court's role is not to decide the merits

of the case or resolve unsettled legal questions." *Chambery*, 2014 U.S. Dist. LEXIS 101939, at

*17 (quotation omitted); *Carson v. Am Brands, Inc.*, 450 U.S. 79, 88 (1981) (recognizing that

courts are not required to "decide the merits of the case or resolve unsettled legal questions").

"Instead, 'the Court need only assess the risks of litigation against the certainty of recovery under

the proposed settlement.'" *Id.* (quoting *Davis v. J.P. Morgan Chase & Co*., 827 F. Supp. 2d 172,

177-78 (W.D.N.Y. 2011)).

Here, there is risk as to both liability and damages.  Plaintiffs would have to overcome

Defendants' defense that their fluctuating workweek practice complied with the law.  Indeed,

further highlighting Plaintiffs' risk as to liability, Defendants have defeated challenges to its

fluctuating workweek model at the Sixth Circuit and elsewhere.  *See Mitchell v. Abercrombie &*

*Fitch Co.*, 225 F. App'x 362 (6th Cir. 2007); *Mitchell v. Abercrombie & Fitch Co.*, 428 F. Supp.

2d 725 (S.D. Ohio 2006); *Eltrich v. Abercrombie & Fitch Stores, Inc.*, No. 05-2-38169-8 SEA

(Wash. Super. Ct. King Cnty. 2006).  Yet, even if the Court found that Defendants' fluctuating

workweek overtime policy violated the law, Defendants would have argued that liability is

limited to a small number of weeks in which holiday pay was included in overtime calculations,

and Defendants would also have argued that Plaintiffs and Class Members were not entitled to

overtime at all inasmuch as they were subject to exemptions under applicable federal and state

laws.  If Plaintiffs proceed through litigation and if the Court were to accept Defendants'

contentions about liability and damages, then Plaintiffs would receive little or no recovery.

Additionally, regarding damages, even if Plaintiffs prevailed on liability, Defendants

have claimed that they did not willfully violate the FLSA and that they acted in good faith.  Here,

they have relued upon prior courts' decisions finding that their fluctuating workweek overtime

policy complied with the law.  If the Court or jury agreed with Defendants' willfulness position

and good faith defense, then there would be a two-year statute of limitations and Plaintiffs would

not be entitled to liquidated (i.e., double actual) damages.  29 U.S.C. §§ 255, 260.  In short,

significant risk existed here as to both liability and damages.  Therefore, this factor supports final

approval of the settlement.

*Fifth,* the risk of obtaining class certification and maintaining it through trial is also

present.  If the settlement is not approved, the Parties will litigate certification as to the FLSA

collective and the Rule 23 state classes.  The Parties anticipate that such determinations would be

reached only after further discovery (for the Rule 23 classes) and intense briefing.  In opposing

class certification, Defendants would likely argue that the differences among various job

positions and stores and other individualized questions as to the exemption status preclude

certification.  Although Plaintiffs disagree, other defendants have prevailed on arguments like

these.  *See, e.g.*, *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011) (affirming

decertification, citing "variations in job duties that appear to be a product of employees working

at different facilities, under different managers, and with different customer bases"); *Myers v*

*Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class certification in

misclassification case based on evidence that class members' duties varied by location).

In addition, the Court has not yet granted permission for Plaintiffs to proceed on their FLSA claims on a collective basis pursuant to 29 U.S.C. § 216(b).  If the Court did authorize FLSA notice, Defendants would likely challenge that determination after the close of discovery with a motion for decertification.  Settlement eliminates the risk and delay inherent in this process.  This factor also supports final approval.

*Sixth*, while Defendants could most likely have withstood a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 178 n.9 (S.D.N.Y. 2000)).  Thus, this factor is neutral and does not preclude the Court from granting final approval.

*Finally,* regarding the last two *Grinnell* factors as to the range of the settlement, defendants have agreed to settle this case for the substantial amount of $5,250,000.  Even though recovery could be greater if Plaintiffs attained class and collective certification, overcame motions to decertify, succeeded on all claims at trial (including those that relate to willfulness and good cause), and survived an appeal, a great recovery is far from certain given the attendant risks of litigation.  If Plaintiffs proceeded through litigation and won every issue, the parties' estimation of damages would have been approximately $8.1 million.  Lesser Decl. ¶ 37. Defendants counter that any recovery could well have been lower for the reasons set forth above. *Id.*  Certainly a $5.25 million settlement is fair and reasonable and properly accounts for the risk, expense, delay, and uncertainty of continued litigation.

Whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the

concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.*
(quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  "[T]here is no reason, at least in
theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part
of a single percent of the potential recovery."  *Grinnell*, 495 F.2d at 455 n.2.  "It is well-settled
law that a cash settlement amounting to only a fraction of the potential recovery will not *per se*
render the settlement inadequate or unfair."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d
615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, 1990 U.S. Dist. LEXIS
11450, at *34-35 (E.D.N.Y. May 22, 1990) (approving $2.3 million settlement over objection
that the "best possible recovery would be approximately $121 million").

Here, all Eligible Class Members will receive a payment based upon the number of
overtime hours they actually worked in proportion to the number of overtime hours worked by
all other Eligible Class Members during the Settlement Class period.  Weighing the benefits of
the settlement against the available evidence and the risks associated with proceeding in the
litigation, the settlement amount is reasonable.

*     *     *

The *Grinnell* factors weigh in favor of final approval.  Because the settlement, on its face,
is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184
(quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), final approval is warranted.

### C.     The Settlement Class Meets the Legal Standard for Class Certification

When faced with a proposed class action settlement, courts examine whether the
settlement class can be certified.  *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir.
2006).  On December 22, 2015, the Court preliminarily certified the Settlement Class.  Dkt. 37.
The Court should now grant final certification because the Settlement Class meets all of the

19

requirements of Rule 23.

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that:

> questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*Id.*  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification.  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### 1.   *Numerosity*

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members . . . ."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Numerosity is certainly met with 4,326 Class Members.  Lesser Decl. ¶ 39.

### 2.   *Commonality*

The proposed Settlement Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (requiring a common contention that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke"); *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983).  The proper question is whether "the disputed issue of law or fact occupies essentially the same degree of centrality to the named plaintiffs' claims as to that of the other members of the proposed class." *Chambery v. Tuxedo Junction, Inc.*, 10 F. Supp. 3d 415, 420 (W.D.N.Y. 2014).

This litigation presents the archetype of a common issue:  namely, whether Defendant's method of paying half time/FWW overtime complied with 29 C.F.R. § 778.114.  Plaintiffs and Class Members all possess that overriding claim.  They also share other common issues, including (a) whether Defendants acted in willful disregard of the law; (b) whether Defendants have an exemption defense; and (c) whether Defendants can establish a good faith affirmative defense.  These common questions are sufficient to satisfy commonality for settlement purposes. *See Chambery*, 10 F. Supp. 3d at 420-21; *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 608-09 (W.D.N.Y. 2011); *Jacob v. Duane Reade, Inc*., 602 Fed. Appx. 3, 6-7 (2d Cir. 2015) (affirming Rule 23 class certification in assistant manager overtime lawsuit).

### 3. *Typicality*

Rule 23 requires that the claims of the representative party be typical of the claims of the class.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class

member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotations omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 U.S. Dist. LEXIS 2914, at *15 (S.D.N.Y. Jan. 12, 2007) (quotation omitted).

Here, typicality exists for the same reason as does commonality: the claims of the Settlement Class as to the legality of Defendants' overtime payments (as well as the ancillary willfulness and good faith issues) are the same for all Class Members, including the Representative Plaintiffs themselves. *Chambery*, 10 F. Supp. 2d at 421 (typicality satisfied where "Plaintiffs' claims for unpaid wages arise from the same factual and legal circumstances that form the basis of the class members' claims").

### 4.    *Adequacy of the Representative Plaintiffs and Class Counsel*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement exists to ensure that "(1) the representative plaintiff's attorneys [are] qualified, experienced, and generally able to conduct the litigation, and (2) the plaintiff's interests [are] not antagonistic to those of the remainder of the class." *Chambery*, 10 F. Supp. 3d at 421 (quotation omitted). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (quotation omitted). In its Preliminary Approval Order (Dkt. 37 ¶ 5), the Court appointed Plaintiffs Hardy, Hepler, Le, Marceau, Pustelnik, Robbins, Thompson, and Wat as the

Representative Plaintiffs.  They meet the adequacy requirement because there is no evidence that they have interests that are antagonistic to or at odds with those of Class Members.  *See Capsolas v. Pasta Res. Inc.*, 2012 U.S. Dist. LEXIS 65408, at *9 (S.D.N.Y. May 9, 2012) (adequacy met where there was no evidence that named plaintiffs' and class members' interests were at odds).  To the contrary, each of the Representative Plaintiffs greatly assisted the prosecution of this litigation and helped obtain this settlement for the Settlement Class.  Lesser Decl. ¶¶ 6-8.

The Court also appointed Plaintiffs' Counsel to be Class Counsel in its Preliminary Approval Order.  Dkt. 37 ¶ 4.  Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and class action law.  See Lesser Dec. Exs. B-E (Class Counsel's resumes attached to declarations).  Class Counsel also invested substantial time and resources into this litigation on a contingency basis for the benefit of the Settlement Class.  Lesser Decl. ¶ 47.  Accordingly, Class Counsel also meet the adequacy requirement of Rule 23(a)(4).

## 5.  *Certification of a Settlement Class Is Proper Under Rule 23(b)(3)*

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  That Plaintiffs meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied.  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

a.    **Common Questions Predominate**

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007). The essential inquiry is whether "'liability can be determined on a class-wide basis, even when there are some individualized damage issues.'" *Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (quoting *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d 124, 139 (2d Cir. 2001)). Simply because a defense "'may arise and [] affect different class members differently does not compel a finding that individual issues predominate over common ones.'" *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (quoting *In re Visa Check/MasterMoney*, 280 F.3d at 138). Where plaintiffs are "unified by a common legal theory" and by common facts, predominance is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Plaintiffs' and Class Members' common factual allegations and legal theory – that Defendants violated wage and hour laws by only paying "half-time" and failing to pay overtime at "time and one-half" of their regular rates – predominate over any factual or legal variations among Class Members. *Chambery*, 10 F. Supp. 3d at 421 (predominance satisfied where a common issue as to the legality of a common pay practice existed). This is particularly true where, as here, a determination that Defendants' half-time overtime practice violated the law would result in a liability victory for all Class Members. *See Davis*, 775 F. Supp. 2d at 609.

Last month, the Supreme Court affirmed a class and collective action trial verdict in an overtime case with allegations of a common policy not to pay overtime wages. *Tyson Foods Inc. v. Bouaphakeo*, 2016 U.S. LEXIS 2134 (Mar. 23, 2016). In *Tyson,* the plaintiffs claimed that

24

they worked "off-the-clock" and were not paid for all overtime hours worked.  The Supreme

Court allowed the use of statistical sampling and representative evidence from some of the

collective and class members to support the verdict in a class and collective action.  *Id*. at \*22-

26.  *Tyson*, recognized widely as an affirmation of aggregate class and collective action trials,

further supports certification for settlement purposes.  The fact that this case both (1) involves a

common policy whose legality is at issue and (2) involves no issues whatever as to hours

worked, makes this case *a fortiori* appropriate for aggregate treatment inasmuch as *Tyson*

involved a more complicated off-the-clock claim where the existence of the supposedly illegal

practice arguably varied and the issue of hours worked was only provable through statistical

analysis.  Here, the predominance element of Rule 23(b)(3) is plainly satisfied.

### b.      A Class Action Is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a comparison examining whether "the

class action device [is] superior to other methods available for a fair and efficient adjudication of

the controversy."  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at

617 ("The policy at the very core of the class action mechanism is to overcome the problem that

small recoveries do not provide the incentive for any individual to bring a solo action

prosecuting his or her rights.").  Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent

to judicial inquiry into the superiority of a class action, including: the class members' interests in

individually controlling the prosecution or defense of separate actions; whether individual class

members wish to bring, or have already brought, individual actions; and the desirability of

concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[3]

---

[3] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in
the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for
settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present

Plaintiffs and Class Members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits filed by Class Members arising from the same allegations.  Concentrating the litigation in this Court is desirable because the class device here will not only achieve economies of scale for putative Class Members, but will conserve the resources of the judicial system, preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar issues and claims.  *See Davis*, 775 F. Supp. 2d at 608-09; *Chambery*, 10 F. Supp. 3d at 421-22.

For these reasons, Plaintiffs respectfully request that the Court finally certify the Settlement Class for settlement purposes.

## V.     PLAINTIFFS' REQUESTS FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT PAYMENTS ARE REASONABLE AND SHOULD BE APPROVED

### A.     Plaintiffs' Request for Attorneys' Fees Is Reasonable Under the Second Circuit's *Goldberger Factors*

Class Counsel seeks an award of attorneys' fees in $1,732,500, which represents 33% of the $5,250,000 common settlement fund.  Defendants do not oppose this application.  This request is reasonable and well within the accepted range awarded in wage and hour cases in this District and throughout the Second Circuit.  Class Counsel submits that they are entitled to such reasonable attorneys' fees to compensate them for their work in achieving this settlement on behalf of the Settlement Class.  In *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000), the Second Circuit articulated six factors to consider in determining the reasonableness of common fund fee applications: "(1) the time and labor expended by counsel; (2) the magnitude

---

intractable management problems, for the proposal is that there be no trial."); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").

and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (5) public policy considerations." (internal quotations omitted).  Class Counsel submits that each of the *Goldberger* factors favors the requested attorneys' fees.

### 1.    *Class Counsel Has Expended Significant Time and Labor*

Class Counsel's time and labor invested in litigating and settling this case was significant and reasonable.  To begin with, Class Counsel has prosecuted this litigation for nearly three years since the *Hepler* matter was filed in May 2013.  In furtherance of their efforts, Class Counsel together expended 2,162.75 hours of professional time for an aggregate lodestar in excess of $1,150,000.00.  Lesser Decl. ¶¶ 50, 53.  The hours reported are reasonable for a case of this complexity and magnitude and length and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff.  *Id.* ¶ 50-51; Ex. D (Declaration of Gregg I. Shavitz ("SLG Decl.")) ¶ 4; Ex. E (Declaration of Sylvia Strikis ("KHHTE Decl.")) ¶ 5; Ex. F (Declaration of David L. Scher ("Block O'Toole Decl.")) ¶ 4.

Activities conducted by Class Counsel include, among many other things, interviewing numerous Assistant Managers; researching the law and Department of Labor regulations, rules, and opinion letters to determine whether there were viable claims; preparing the class and collective action complaints in the *Hepler, Pang, Robbins,* and *Wat* matters; reviewing Defendants' responsive pleadings and researching law concerning their novel exemption defense in the context of a fluctuating workweek overtime claim; drafting successful opposition briefing to oppose Defendants' motion to transfer the *Hepler* matter to Ohio; drafting and responding to discovery requests; negotiating complex protocols for electronically stored information; reviewing significant document production from Defendants; obtaining documents from

Plaintiffs and reviewing for responsiveness and privilege; engaging in discovery, including

Defendants' declaration of tens of thousands of pages and depositions and deposition

preparation; preparing opposition briefing regarding Defendants' motion claiming that Plaintiffs'

claims were moot due to offers of judgment; preparing collective action certification motions in

the *Hepler* and *Robbins* actions; after unfavorable ruling on Defendants' mootness motion,

drafting successful appellate briefing and arguing before the Second Circuit to reverse the *Hepler*

district court's decision that Plaintiffs' claims were moot; preparing for and defending

depositions of Plaintiffs; obtaining damages data for the Class Members and completing a

detailed, class-wide damages analysis; having numerous telephone calls with defense counsel

regarding the claims and successfully convincing Defendants to mediate this matter on a class-

wide basis; preparing for and participating in a full-day mediation; successfully negotiating the

settlement; preparing all settlement papers including Settlement Agreement, notice form, and

preliminary approval motion papers; working with the Claims Administrator to ensure that the

settlement administration is done correctly and complies with the Court's Preliminary Approval

Order (Dkt. 37); and communicating on an almost daily basis with Plaintiffs and Eligible Class

Members regarding the settlement.  Lesser Decl. at ¶ 55 (relating work done); SLG Decl. ¶ 3

(same); KHHTE Decl. ¶ 3 (same); Block O'Toole Decl. ¶ 3 (same).  In addition, work is will be

necessary hereafter to effectuate the administration of the settlement.  *Beckman*, 293 F.R.D. at

482 ("Class Counsel is often called upon to perform work after the final approval hearing,

including answering class member questions, answering questions from the claims administrator,

and negotiating and sometimes litigating disagreements with defendants about administering the

settlement and distributing the fund."); *Parker v. Jekyll & Hydye Entm't Holdings., L.L.C.*, 2010

U.S. Dist. LEXIS 12762, at *7-8 (S.D.N.Y. Feb 9, 2010)  ("[A]s class counsel is likely to expend

significant effort in the future implementing the complex procedure agreed upon for collecting

and distributing the settlement funds, the multiplier will diminish over time."). Class Counsel's

time expenditure was reasonable given the long and contested litigation against formidable

counsel for Defendants who fought Plaintiffs at every step of this litigation.

## 2.     *This Class Action Involves Complex Legal Issues*

Courts have recognized that wage and hour cases involve complex factual and legal

issues. *See, e.g.*, *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, at *16 (S.D.N.Y. Sept.

16, 2011); *Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 743 (1981) ("FLSA claims

typically involve complex mixed questions of fact and law."). This action is no different. It

presented significant, complex legal issues that applied to thousands of Assistant Managers who

work or worked at Abercrombie in New York, Connecticut, Illinois, Maryland, Massachusetts,

New Jersey, Ohio, and Washington. The case hinged on several mixed questions of fact and law,

including the facts surrounding the fluctuating workweek policy, the job duties of Assistant

Managers, and the legal questions of whether Defendants' fluctuating workweek policy complied

with the law and whether Assistant Managers were exempt from the overtime provisions of the

law. These mixed factual and legal questions support approval of Class Counsel's request for

attorney's fees. *See Johnson*, 2011 U.S. Dist. LEXIS 105775, at *49-50; *Tiro v. Public House

Invs., LLC*, 2013 U.S. Dist. LEXIS 129258, at *39-40 (S.D.N.Y. Sept. 10, 2013).

## 3.     *The Risk of Receiving an Adverse Ruling on the Merits and/or Certification of the Collective or Classes Is Significant*

Courts consider "the risk of litigation to be perhaps the foremost factor to be considered

in determining the award of appropriate attorneys' fees." *Tiro*, 2013 U.S. Dist. LEXIS 129258,

at *40 (citing *Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *10 (S.D.N.Y. Jan. 31, 2007)).

"[D]espite the most vigorous and competent of efforts, success is never guaranteed." *Taft*, 2007

U.S. Dist. LEXIS 9144, at *10.  Class Counsel undertook this action on a contingency fee basis,

assuming a substantial risk they might not be compensated for their efforts.  Lesser Decl. at ¶ 47.

Courts recognize the risk of non-payment as a factor in this regard.  *Davis*, 827 F. Supp. 2d at

186 (recognizing that risks of litigation support attorneys' fee request of one-third of the

settlement fund); *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *41 ("Due also to the contingent

nature of the customary fee arrangement, lawyers are asked to be prepared to make this

investment with the very real possibility of an unsuccessful outcome and no fee of any kind.");

*Craig v. Rite Aid. Corp.*, 2013 U.S. Dist. LEXIS 2658, at *13 (W.D Pa. Jan. 7, 2013)

("[C]oncerning the risk of nonpayment, we note that because Class Counsel accepted this case

on a contingent fee basis, the risk of nonpayment was and remained substantial throughout.").

To prevail on liability, Plaintiffs would have to prove that Defendants' fluctuating

workweek policy violated the law **and**, perhaps, also show that Plaintiffs were misclassified as

exempt, given Defendants' defense that to the extent their fluctuating workweek policy was

flawed, Plaintiffs were still exempt from overtime.  In the wage and hour context, more

misclassification collective action cases have been lost than won in recent years.[4]  Had this case

been dismissed on summary judgment, trial or appeal, Class Counsel would have received no

payment for their work.  Lesser Decl. ¶ 51.  Accordingly, Class Counsel's fee request is

supported by this factor.  *Davis*, 827 F. Supp. 2d at 186 (recognizing that risks of litigation

support one-third attorneys' fee request); *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *41 (same);

*Johnso*n, 2011 U.S. Dist. LEXIS 105775, at *18 (same).

---

[4] *Compare Morgan v. Family Dollar Stores*, *Inc.*, 551 F.3d 1233 (11th Cir. 2008) (plaintiffs' verdict); *Stillman v. Staples, Inc.*, 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 11, 2009) (same) *with Perkins v. Southern New England Tel. Co. Inc*., No. 3:07-00967 (Judgment, Dkt.  572) (D. Conn. Oct. 24, 2011) (defendant's verdict); *Henry v. Quicken Loans, Inc*., Case No. 2:04-cv-40346-SJM-MJH (E.D. Mich. 2011) (same); *Bell v. Citizens Fin. Group, Inc*., 2:10-cv-00320 (W.D. Pa. 2013) (same).  *See* Lesser Decl. ¶ 54.

#### 4.     *The Parties Are Represented by Counsel with Significant Experience in Wage and Hour Litigation*

Plaintiffs' submit that the quality of lawyering has been high on both sides.  "To determine the 'quality of the representation,' court review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the case."  *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *42; *Johnson*, 2011 U.S. Dist. LEXIS 105775, at *51-52 (same).  The Class Members are represented by experienced counsel who have invested substantial time and resources into the prosecution of this litigation.  *See* Lesser Decl. ¶ 57-58; SLG Decl. ¶¶ 3-5; KHHTE Decl. ¶¶ 3-5; Block O'Toole Decl. ¶¶ 3-5.  Class Counsel have served as class counsel in numerous class and collective actions, including many significant wage and hour overtime cases involving retail assistant manager.  Lesser Decl. ¶ 43; *see also id.* at Ex. C; SLG Decl. at Ex. 1; KHHTE Decl. at Ex. 1; Block O'Toole Decl. at Ex. 1.  Class Counsel steered the case from inception through the entirety of the litigation's history, including the discovery, which involved complex electronically stored information issues, the contested conditional certification, the Second Circuit appeal, the handling of document preservation matters for Plaintiffs, the review of a significant document production, and the mediation that led to the Settlement.  Class Counsel's experience in representing workers in wage and hour class and collective actions was, we believe, directly responsible for bringing about the positive settlement. *See Johnson*, 2011 U.S. Dist. LEXIS 105775, at *51-52 (citing class counsel's experience as a factor supporting an attorney's fee award of 33% of the fund); *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *42 (same).

Defendants, in turn, were represented by Vorys, Sater, Seymour & Pierce LLP and Bond, Schoeneck & King PLLC, two law firms with well-known and respected employment and labor law practices.  "The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work," and Defendants' counsel vigorously defended Abercrombie.  *Tiro*, 2013

U.S. Dist. LEXIS 129258, at *42-43 (quoting *In re Glob. Crossing Sec. & ERISA Litig*., 225

F.R.D. 436, 467 (S.D.N.Y. 2004)).  Accordingly, this factor weighs in favor the requested fees.

> **5.**     ***Class Counsel's Request for Attorneys' Fees Is Reasonable and Accords with Similar Awards in This Circuit***

Class Counsel's request for what is just under a one-third fee is "consistent with the

norms of class litigation in this circuit."  *McMahon v. Olivier Cheng Catering & Events, L.L.C*.,

2010 U.S. Dist. LEXIS 18913, at *20 (S.D.N.Y. Mar. 2, 2010).  "'In class settlement funds like

this one, a one-third award of the settlement proceeds [for attorneys' fees] is considered typical

and reasonable . . . because "[t]he attorneys' fees requested were entirely contingent upon

success.  Proposed Class Counsel risked time and effort and advanced costs and expenses, with

no ultimate guarantee of compensation.'"  *Knapp v. Badger Techs., Inc*., 2015 U.S. Dist. LEXIS

77186, at *15 (W.D.N.Y. June 15, 2015)  (quoting *Guippone v. BH S&B Holdings, LLC*, 2011

U.S. Dist. LEXIS 126026, at *24-27 (S.D.N.Y. Oct. 28, 2011) and collecting cases); *accord*

*Chambery*, 2014 U.S. Dist. LEXIS 101939, at *22-24 (approving attorneys' fee request of one-

third of settlement fund); *Lovaglio v. W & E Hosp*., 2012 U.S. Dist. LEXIS 94077, at *3

(S.D.N.Y. July 5, 2012) (awarding one-third of the total settlement amount in a wage and hour

class action); *Palacio v. E\*Trade Fin. Corp*., 2012 U.S. Dist. LEXIS 88019, at *26 (S.D.N.Y.

June 22, 2012) (awarding class counsel 33 1/3% of settlement fund in wage and hour case);

*Johnson*, 2011 U.S. Dist. LEXIS 105775, at *19 ("A fee of 33% of the Settlement Fund is

reasonable and consistent with the norms of class litigation in this circuit."); *Hens v. ClientLogic

Oper. Corp.*, 2010 U.S. Dist. LEXIS 139126, at *6-8 (W.D.N.Y. Dec. 19, 2010) (awarding 33

1/3% of the settlement fund to Class Counsel); *Stefaniak v. HSBC Bank USA, N.A.*, 2008 U.S.

Dist. LEXIS 53872, at *9-10 (W.D.N.Y. June 28, 2008) (collecting cases and awarding class

counsel 33 1/3% of $2.9 million settlement fund in wage and hour action); *Gilliam v. Addicts*

32

*Rehabilitation Center Fund,* 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008)

(finding the one-third award to be reasonable without engaging in a lodestar cross-check; stating

that award of one-third "is consistent with the norms of class litigation in this circuit"). A fee of

33% is decidedly in line with this Circuit's wage and hour cases – even in other cases where the

settlement range, compared to the value of the claims, were well less than here.[5]

### 6.    *Public Policy Considerations Favor The Fee Requested*

Finally, public policy supports the requested fee award because the award "properly

balances the policy goal of encouraging counsel to pursue meritorious actions while protecting

against excessive fees." *Dupler v. Costco Wholesale Gr.*, 705 F. Supp. 2d 231, 244 (E.D.N.Y.

2010). In rendering awards of attorneys' fees, courts in this circuit "have also taken into account

the social and economic value of class actions, and the need to encourage experienced and able

counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399

(S.D.N.Y. 1999). Where relatively small claims can only be prosecuted through aggregate

litigation, and where wage and hour abuses would go without remedy because attorneys would

be unwilling to take on the risk, "[a]dequate compensation for attorneys who protect those rights

---

[5] In fact, 33% or one-third fees were awarded in all of the following wage and hour settlements: *v. Modell's Sporting Goods, Inc.,* 2015 U.S. Dist. LEXIS 32060, at *21 (S.D.N.Y. Mar. 12, 2015); *Raniere v. Citigroup Inc.,* 310 F.R.D. 211, 220 (S.D.N.Y. 2015); *Flores v. Anjost Corp.*, 2014 U.S. Dist. LEXIS 11026, at *24-26 (S.D.N.Y. Jan. 28, 2014); *Hernandez v. Merrill Lynch & Co.,* 2013 U.S. Dist. LEXIS 42681, at *23 (S.D.N.Y. Mar. 21, 2013); *Guaman v. Ajna-Bar NYC,* 2013 U.S. Dist. LEXIS 16206, at *17-18 (S.D.N.Y. Feb. 5, 2013); *Capsolas v. Pasta Res. Inc.*, 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) ; *Spicer v. Pier Sixty LLC*, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012); *Alli v. Boston Mkt. Corp.,* No. 10-cv-0004 (Order, Dkt. 177) (D. Conn. Apr. 13, 2012); *Davis,* 827 F. Supp. 2d at 185-86; *Ferreira*; *deMunecas v. Bold Food, LLC,* 2010 U.S. Dist. LEXIS 87644, at *19 (S.D.N.Y. Aug. 23, 2010); *Prasker v. Asia Five Eight LLC,* 2010 U.S. Dist. LEXIS 1445, at *17 (S.D.N.Y. Jan. 4, 2010); *Clark v. Ecolab*, 2009 U.S. Dist. LEXIS 76613, at * 27 (S.D.N.Y. May 11, 2010); *Duchene v. Michael Cetta, Inc*., 2009 U.S. Dist. LEXIS 85955, at *8 (S.D.N.Y. Sept. 10, 2009); *Parker,* 2010 U.S. Dist. LEXIS 12762, at *7; *Faican v. Rapid Park Holding Corp*., 2010 U.S. Dist. LEXIS 64382, at *6 (E.D.N.Y. June 29, 2010); *McMahon,* 2010 U.S. Dist. LEXIS 18913, at *18; *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,* 2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31, 2009); *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *15.

by taking on such litigation furthers the remedial purpose of those statutes." *Johnson*, 2011 U.S. Dist. LEXIS 105775 at *56 (citations omitted).  Courts have recognized that "fee awards in cases like this serve the dual purposes of encouraging private attorneys general to seek redress for violations and discouraging future misconduct of a similar nature." *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *45 (internal quotation marks and citations omitted).  Here, Class Counsel successfully obtained significant monetary compensation for the Class Members.  By aggregating the claims of individual Assistant Managers, an award of attorneys' fees ensures that "plaintiffs' claims [will] … likely be heard." *Frank*, 228 F.R.D. at 189.

"In addition, no Class Members objected to the attorneys' fees or any other part of the settlement, a reaction which is entitled to great weight by the Court." *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *43.  This favors the requested attorneys' fees.  *Id.*; *Khait v. Whirlpool Corp.,* 2010 U.S. Dist. LEXIS 4067, at *16 (S.D.N.Y. Jan. 20, 2010) ("'The fact that the vast majority of class members neither objected nor opted out is a strong indication' of fairness.") (quoting *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008)).

### 7.     *The Lodestar Cross Check Further Supports an Award to Class Counsel of One-Third of the Settlement Fund*

Following *Goldberger*, "the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a baseline or cross check." *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *46 (citing *Johnson*, 2011 U.S. Dist. LEXIS 105775, at *20).  "The percentage method is often preferred in part because it 'spares the court and the parties the cumbersome, enervating, and often surrealistic process of lodestar computation.'" *Davis*, 827 F. Supp. 2d at 184 (quoting *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2011 U.S. Dist. LEXIS 79786, at *35 (E.D.N.Y. July 15, 2011) and *Goldberger*, 209 F.3d at 50).  "Other advantages of the percentage method that courts have identified are that it provides an incentive to attorneys to

resolve the case efficiently and to create the largest common fund out of which payments to the

class can be made, and that it is consistent with the system typically used by individual clients to

compensate their attorneys." *Davis*, 827 F. Supp. 2d at 184; *see also Wal-Mart Stores,* 396 F.3d

at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s]

lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of

line-item fee audits.").

The lodestar analysis is performed by multiplying the number of hours reasonably

expended on a client's case by a reasonable hourly billing rate for such services. *Johnson*, 2011

U.S. Dist. LEXIS 105775, at *58 (citation omitted). "[W]here [the lodestar method is] used as a

mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the

district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's

familiarity with the case." *Goldberger*, 209 F.3d at 50. Instead, the reasonableness of the

claimed lodestar amount can be tested by the court's familiarity with the case. *Id.* Courts in this

Circuit regularly award lodestar multipliers from two to six times lodestar with some courts

approving fee requests that are "up to eight times the lodestar, and in some cases, even

higher…." *Beckman*, 293 F.R.D. at 477 (approving fee of 6.3 times lodestar in overtime class

action); *Wal-Mart*, 396 F.3d at 123 (deeming a multiplier of 3.5 reasonable and citing cases

involving multipliers between 1.35 and 4.5); *accord Johnson*, 2011 U.S. LEXIS 105775, at *58-

59 ("Courts regularly award lodestar multipliers from two to six times lodestar") (collecting

cases); *Davis*, 827 F. Supp. 2d at 185 (approving fee request of one-third of common fund with

5.3 lodestar multiplier); *Yuzary v. HSBC Bank USA, N.A.*, 2013 U.S. Dist. LEXIS 144327, at *29

(S.D.N.Y. Oct. 2, 2013) (awarding multiplier of 7.6 in overtime class action); *see In re Telik, Inc.*

*Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.").

Here, Class Counsel's lodestar to date is $1,154,709.50.  *See* Lesser Decl. ¶ 53.  Thus the requested attorneys' fees of $1,732,500, results in a multiplier of 1.5, which is both itself below the common 2 to 6 range and also does not include such time as will hereafter be spent on the settlement administration.  *Id.*  Most respectfully, given the contingency nature of the representation and significant recovery to the Class Members, this multiplier is decidedly reasonable.  As to time hereafter, given Class Counsel's experience in the settlement of other class actions, there will be additional time expended to oversee the settlement administration and to handle a significant volume of calls from the Class Members, which will reduce the multiplier even further.  *Id.* ¶ 52.  Class Counsel's fee request is well within the range of reasonability, particularly for a case in which the Class Members' reaction has been so positive, not one Class Member objected to the fee request which was explained in the Notice, and the result obtained was such a high proportion of any possible recovery.

> **B.    The Court Should Permit Payment of Costs and the Settlement Expenses from the Settlement Fund**

Pursuant to the Settlement Agreement, Class Counsel seeks reimbursement for litigation expenses of $52,500 from the settlement fund, as well as payment of the settlement costs to the Claims Administrator, Settlement Services, Inc.  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (quotation omitted).  As indicated in the Lesser Declaration at paragraph 58, Class Counsel's expenses are monies that counsel has invested at their own expense so as to meet the costs of the litigation and they total $62,774.47,

which is actually $10,000 more than what is being sought.  The costs were reasonable and

incurred in the prosecution of this matter.  They include expenses such as filing fees, postage,

on-line research, travel to depositions and the mediation, depositions and transcripts costs,

Second Circuit appellate brief and record printing, and the mediator.  *Id.*  The expenses were

incurred to benefit the Class Members, and Class Counsel may be reimbursed for them.  *See,*

*e.g., Stefaniak*, 2008 U.S. Dist. LEXIS 53872, at *11; *Chambery*, 2014 U.S. Dist. LEXIS

101939, at *26-27.  No objections were received to the expense request, which was set out in the

Notice.  Patton Decl. at Ex. A at 3.

As to its costs and expenses, Settlement Services, Inc. has provided notice as directed by

the Court.  Going forward should the Court finally approve this settlement, Settlement Services,

Inc. will make settlement payments, determine payroll taxes, and issue W-2 and 1099 forms to

all Eligible Class Members.  Settlement Agreement at ¶¶ 7, 43(c).  Settlement Services, Inc. has

estimated that its expenses in handling the notice and administration to completion will be only

$39,850.  Patton Decl. ¶ 11.  Based on Class Counsel's experience, this amount is reasonable.

Lesser Decl. ¶ 64.

### C.      Enhancement Payments to Representative Plaintiffs Should Be Approved

Courts routinely approve enhancement payments in wage and hour class and collective

actions.  *See, e.g., Frank*, 228 F.R.D. at 187 ("[S]uch awards are particularly appropriate in the

employment context.  In employment litigation, the plaintiff is often a former or current

employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit

of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.");

*Flores*, 2014 U.S. Dist. LEXIS 11026, at *27-28 ($25,000 service awards to each named

plaintiff); *Capsolas*, 2012 U.S. Dist. LEXIS 144651, at *26-27 (awards of $20,000 and $10,000);

*Sewell v. Bovis Lend Lease LMB, Inc*., 2012 U.S. Dist. LEXIS 53556, at *40-43 (S.D.N.Y. Apr. 20, 2012) (awards of $10,000 and $15,000). Without opposition, Plaintiffs seek enhancement payments of $7,000 to each of the Representative Plaintiffs. The request is reasonable given the contributions these individuals made to advance the prosecution and resolution of this case.

The Representative Plaintiffs aided Class Counsel's investigation and prosecution of the claims, provided information and documents to Class Counsel, had numerous telephone calls and meetings with Class Counsel to discuss the strategy, prosecution, and settlement of the cases, and some participated in discovery and sat for deposition. Lesser Decl. ¶ 61. Their efforts substantially aided the prosecution of this case on behalf of the Class Members and warrant recognition. *See Hens*, 2010 U.S. Dist. LEXIS, at *5-6 (finding that enhancement payment of $7,500 to six representative plaintiffs are "within the range of reasonableness" in the Second Circuit in employment-related cases); *Spam v. AOL Time Warner, Inc*., 2005 Dist. LEXIS 10848, at *27 (S.D.N.Y. June 7, 2005) (finding $10,000 award for each named plaintiff to be appropriate); *Flores*, 104 F. Supp. 3d at 316 ($10,000 enhancement award).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Unopposed Motion for Final Approval of the Class Action Settlement, for Award of Attorneys' Fees and Expenses, for Approval of Enhancement Payments to the Representative Plaintiffs and for Payment of the Claims Administrator's Costs and Expenses and enter the Proposed Final Order and Judgment submitted contemporaneously with this memorandum.

Dated: April 25, 2016
　　　Rye Brook, New York

Seth R. Lesser
Fran L. Rudich
Michael Reed
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Tel:     (914) 934-9200
Fax:     (914) 934-9220

Gregg I. Shavitz*
SHAVITZ LAW GROUP, P.A.
1515 South Federal Highway, Suite 404
Boca Raton, Florida 33432
Tel:     (561) 447-8888
Fax:     (561) 447-8831

Michael Palitz
SHAVITZ LAW GROUP, P.A.
830 3rd Avenue, 5th Floor
New York, New York 10022
Tel:     (800) 616-4000
Fax:     (561) 447-8831

Silvija A. Strikis*
Andrew M. Hetherington*
KELLOG, HUBER, HANSEN, TODD,
EVANS & FIGEL, PLLC
1615 M Street NW, Suite 400
Washington, DC  20036
Tel:     (202) 326-7900
Fax:     (202) 326-7999

David L. Scher
BLOCK O'TOOLE & MURPHY LLP
1 Pennsylvania Plaza #5315,
New York, NY 10119
Telephone:  (212) 736-5300

*Attorneys for Plaintiffs and the Proposed
Settlement Class*

*admitted or to apply for admission
*pro hac vice*